IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE WOLSTENHOLME | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 10-5974 |
| JOSEPH BARTELS | : | |

**MEMORANDUM**

Ludwig, J.                                                                                          September 19, 2011

This action arises from a business dispute. Plaintiffs Eugene Wohlstenholme and Louisiana Composite Technologies, Inc. commenced the action in the Bucks County Court of Common Pleas. Defendant Joseph Bartels filed a Notice of Removal in this court pursuant to 28 U.S.C. § 1332, alleging diversity jurisdiction. Defendant then filed a motion to dismiss for lack of personal jurisdiction over him. Defendant requests dismissal, or in the alternative, transfer to the Eastern District of Louisiana. Plaintiffs request remand. For the following reasons, this case will be dismissed for lack of personal jurisdiction.[1]

---

[1] In general, challenges to subject matter jurisdiction are resolved before questions of personal jurisdiction. Stella Maris Ins. Co., Ltd. v. Catholic Health East, 2010 WL 3522106, at *2 (E.D. Pa., Sept. 8, 2010), citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999). However, "[w]here a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult or novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." Ruhrgas, 526 U.S. at 588.

In this case, the subject-matter jurisdiction issue is simple on its face: plaintiffs' remand motion argues that complete diversity does not exist. Individual plaintiff Wohlstenholme, a Pennsylvania resident, asserts claims individually and derivatively on behalf of corporate plaintiff Louisiana Composite Technologoes, Inc. LCTI is a corporation organized and existing under the laws of Louisiana. Complaint, 3. Defendant is also alleged to be a resident of Louisiana. Id., 2.

The record[2] reflects the following. Defendant is a Louisiana resident, licensed to practice law in Louisiana and Texas. Bartels Affidavit, Exhibit A to motion to dismiss, ¶¶ 1, 2. He is also an aviator, and through this hobby became acquainted with plaintiff Wohlestenholme's son, Bob Wohlstenholme, also an aviator. Id., ¶ 9. Both owned planes built from Lancair kits, and met regularly at aviation events. Id. When Lancair became available for acquisition, defendant looked into obtaining it and its related entities - all

---

Defendant's Notice of Removal renders the subject-matter issue more complicated: defendant acknowledges the presence of LCTI, but argues that LCTI was fraudulently joined to destroy diversity jurisdiction, and that the allegations asserting claims on its behalf are insufficient as a matter of law for three reasons. First, while the complaint alleges "this is an action by a shareholder in a close corporation," complaint, ¶ 6, it does not allege that individual plaintiff Wohlstenholme is a shareholder of LCTI with standing to make a derivative claim on its behalf. Notice of Removal, ¶¶ 9-19. Next, the complaint does not make any claim for relief on behalf of LCTI individually, but rather makes a claim for damages to "the Company," which the complaint identifies as several different entities involved in the transactions at issue. Id., ¶¶ 20-21. It also appears that the requirements of Pennsylvania Rule 1506(2) governing enforcement of a corporation's rights by the corporation itself have not been complied with. Id., ¶ 24.

The issue whether Wohlstenholme has standing to make a derivative claim on behalf of LCTI by reason of transactions envisioned or undertaken pursuant to the Operating Agreement executed by plaintiff and defendant is not straightforward. Moreover, the issue whether plaintiff has complied with Pennsylvania Rule of Civil Procedure 1506(2) governing enforcement of a corporation's rights by the corporation itself is a pure question of state law. "A court disposing of a case on personal jurisdiction grounds 'should be convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved.'" Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 155 (2d Cir. 1996). In contrast, the issue whether a federal court sitting in Pennsylvania may exercise jurisdiction over a Louisiana resident under the facts presented in this case is relatively clear. Because this court may not exercise personal jurisdiction over defendant Bartels, plaintiffs' motion for reman will be denied as moot.

[2] The record includes the pleadings, two affidavits of Joseph C. Bartels and the Declaration of Eugene Wolstenholme.

Oregon corporations, with the exception of one Phillipines corporation. Id., 10-12.³ When the bidding put acquisition out of defendant's reach, Wohlestenholme's son told defendant that his father had money that he'd like to invest. Id., ¶¶ 13-17.⁴

To confirm Wohlstenholme's interest, defendant contacted him by telephone. Id., 18. All of the succeeding contacts between defendant and Wohlestenholme were by telephone and fax, Wohlstenholme in Pennsylvania, defendant in Louisiana. Id., ¶ 21. Defendant drafted the Operating Agreement memorializing their discussions, and faxed it to Wohlstenholme. Id., ¶ 19. Wohlstenholme executed the agreement in Pennsylvania and faxed it to Louisiana, where defendant executed it. Id., ¶ 20. Pursuant to the agreement, Wohlstenholme forwarded his cash contribution to defendant in Louisiana. Id., ¶ 23.

To consummate the purchase, defendant incorporated Louisiana Composite Technologies, Inc., a Pennsylvania corporation, which acquired the assets involved, and redistributed them to the newly organized entities, all organized under Oregon law. LCTI also held stock in those entities for the benefit of Wohlstenholme. The assets were transferred in 2003 and Lancair has conducted business from Oregon since then. Id., ¶¶ 23,

---

³ The entities include Lancair International, Inc., Neico Aviation, Inc., Kit Components, Inc., Lancair Avionics, Inc., IV, Inc., IV-P, Inc., ES, Inc., and MKIIm Inc., and Pacific Aeronauticals, Inc. Bartels Affidavit, ¶¶ 10-12.

⁴ Both Wohlstenholme and his son had previous business interactions with Lancair. Prior to 2002, Wohlstenholme had loaned several million dollars to The Lancair Company, a corporation organized by Lancair's owner, Lance Niebauer. Bartels Affidavit II, Exhibit A to reply memorandum, ¶¶ 37-38. Wohlstenholme's son, a machinist, manufactured and supplied to Lancair parts that were included in the kits sold by the company.

25-29.[5]

In approximately 2005, in response to economic considerations, Lancair worked to develop a new design of aircraft. Bartels Affidavit II, Exhibit "A" to reply memorandum, ¶ 18. Wohlstenholme made additional capital contributions to this end in the years 2006 through 2008. The contributions were negotiated between Wohlstenholme in Pennsylvania and Lancair personnel (Tom Pickell, Acting Chief Financial Officer from 2006 through 2008, and Tim Ong, General Manager of Lancair from 2003 through 2009). Bartels Affidavit II, ¶ 20. Pickell and Ong negotiated from Oregon; Wohlstenholme from Pennsylvania. Defendant was not involved in those discussions.

During the period 2008 through 2010, Wohlstenholme's son regularly travelled to Lancair headquarters in Oregon, where he had unlimited access to the facility, its employees and its records. Bartels Affidavit II, ¶¶ 12-13. Wohlstenholme, too, visited the Oregon facility. Id., ¶ 14. In 2009, in the wake of the general economic downturn, the parties determined to discuss the continued operation of Lancair. Defendant suggested a meeting in Oregon, where all of Lancair's books and records were located. Id., ¶¶ 23-25. Wohlstenholme requested that defendant travel to Pennsylvania, which he did in February and April of 2010. Id., ¶¶ 26-27. In June 2010, pursuant to a letter agreement, Wohlstenholme made an additional capital contribution, and obtained a majority interest and

---

[5] Lancair continues to do business in Oregon under plaintiff's management and direction pursuant to agreements executed by the parties in July 2010. Bartels Affidavit II, 30. In September 2010, defendant's position at Lancair was terminated by Bob Wohlstenholme, CEO of Lancair as plaintiff's designee. Id., ¶¶ 30-31.

management rights in Lancair. Defendant's position at Lancair was terminated in September 2010. This litigation followed.

A district court may assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. Fed. R. Civ. P. 4(e); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute permits a court to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). However, in order for a court to exercise personal jurisdiction over a defendant in accordance with procedural due process, defendant must have availed itself of the benefits of doing business in the forum of that court with such minimum contacts that it could expect to be haled into court there. Int'l Shoe v. Washington, 326 U.S. 310 (1945); World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980). Therefore, in order for this court to exercise personal jurisdiction over Bartels, he must have "'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007), quoting Int'l Shoe, supra.

A court may exercise either general or specific personal jurisdiction over a defendant. Helicoptores Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). The exercise of general jurisdiction is appropriate where the defendant's contact with the forum is continuous and systematic. Id., at 415. "Significantly more than mere minimum contacts"

is required. Provident Nat'l Bank v. Cal. Fed. Sav & Loan Ass'n., 819 F.2d 434, 437 (3d Cir. 1987). Specific jurisdiction exists where a defendant has specifically directed activities at the forum, and the claim arises from his forum related activities. Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). "The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (individual's contract with out-of-state party does not "automatically establish sufficient minimum contacts in the other party's home forum.")

Under the facts presented, there is no basis for the exercise of general jurisdiction over defendant. He does not have continuous and systematic contacts with Pennsylvania, and his contacts with Wohlstenholme - faxes and telephone calls - are not sufficient to justify assertion of personal jurisdiction over him. "'Informational communications in furtherance of [a contract between a resident and a non-resident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the non-resident defendant].'" Velotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 152 (3d Cir. 1996) (quotation omitted).

Defendant's later contacts with Pennsylvania - the 2010 visits cited by Wohlstenholme - did not give rise to the claims asserted in the complaint. Those relate to capital contributions Wohlstenholme is alleged to have made in 2003 for the initial acquisition of

Lancair and in 2006 and 2008 when new development required new capital. As such, they do not provide a basis for the exercise of specific jurisdiction. "Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Remick v. Manfredi, 238 F.3d 248, 255 (3d Cir. 2001).

According to Wohlstenholme, because he has asserted claims for intentional torts (Count III - fraud, Count IV - breach of fiduciary duty, and Count V - breach of am implied covenant of good faith and fair dealing), the "effects test" permits the exercise of jurisdiction by the court in the forum in which the effects of defendant's conduct are felt. Calder v. Jones, 465 U.S. 783 (1984). However, even under the effects test, Wohlstenholme's residence within the forum is not, standing alone, enough to permit the exercise of jurisdiction over a non-resident defendant. This "would mean that jurisdiction in intentional tort cases would always be appropriate in the plaintiff's home state, since the plaintiff always feels the impact of the tort there." IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 263 (3d Cir. 1998). Instead, "defendant must expressly aim the tortious activity at the forum." Id. at 264. Here, to the extent that loss has occurred, it is measured in terms of the loss of value of an Oregon business resulting from defendant's conduct in Oregon and, arguably, Louisiana. This does not justify the exercise of jurisdiction by a Pennsylvania court under the effects test.

Accordingly, there is no basis for the exercise of personal jurisdiction over defendant Bartels and plaintiffs' complaint is dismissed.[6]

BY THE COURT:

/s/ Edmund V. Ludwig
Edmund V. Ludwig, J.

---

[6] Defendant also argues that venue in this district is improper: no defendant resides here, none of the events giving rise to the claim occurred here, and the claim could have been brought in Louisiana, where defendant resides. 28 U.S.C. § 1391. Under the facts, venue in this district is improper and as such, this action must be dismissed, rather than transferred to a different district. 28 U.S.C. § 1406.